So we will just begin with the argument on the first case. Shansman et al. versus Sberbank of Russian PJSC. And Mr. Osslander, I see you reserved two minutes for rebuttal. You can begin whenever you're ready. Yes, Your Honor. May it please the court, J. Osslander for defendant appellant, Sberbank of Russia. I want to start just by taking something that I think was a big part of the briefs, but that is now no longer at issue here today, which is the question of presumptive immunity based on Dole. At this point, given this court's ruling in the Bartlett versus Basiri case in August of this year, that the issue of presumptive immunity for Sberbank is no longer on the table. They do have, in that opinion, we did leave some opening for the possibility of gamesmanship, and they do say that they believe there should be some discovery on that issue. So isn't that issue potentially still open or not? The issue of whether there should be discovery on the issue of gamesmanship is open. However, they didn't cross appeal. They haven't asked for that affirmative relief, and so I don't really think it's at issue at this point. All right. What I then want to do is, since that's been dealt with, and yes, Your Honor, I think you're referring to that 28-J letter, I'll turn to what I think is really the threshold and most important issue here today, and that's the question of whether the commercial activity exception applies to claims brought under the ATA. And the answer to that is no, and there has never been a case that has held otherwise. There is nothing in the text of the statute. And no case has held either way. This hasn't been addressed by any court, right? Well, it hasn't been addressed by any court, Your Honor. There were two district court cases, Lutton and Smith, that we cite in our papers. There were actually pre-JASTA cases where the plaintiffs had argued that the FSIA general exceptions should be applied to the ATA. One was in the District of Columbia, one was in the Southern District of New York. Both of those cases, the courts ruled that those exceptions do not apply to the ATA. Let me frame what I think is the main argument. You can tell me why you disagree with it. They obviously rely on the plain text of 1605A that says a foreign state shall not be immune from the jurisdiction of the court of the United States in any case. Yes. And they argue that as a result of that, the ATA did not think it necessary to reevaluate or reassess immunity that already existed and was covered by the FSIA. So what's your response to that? My response to that is that in any case, as used in the FSIA at that time, again, just to put it in context, I think it's important, right, FSIA is a 1976 statute. ATA comes along much later in 1992 and the JASTA exception even later than that in 2016. At the time that was written, in any case, and even today, means in any case under the FSIA because the FSIA has a very specific exception when it comes to claims under ATA. 1605B cross-references ATA. It says that claims that notwithstanding anything in 2337, which is ATA, there's one exception. The exception is that you can bring a claim under ATA where there's an act of terrorism that happens in the United States and the damage occurs in the United States. It's very specific. It doesn't say, it doesn't say, and by the way, this is an exception in addition to all the other exceptions, it just says that's the exception. And the congressional history, when you look at it, shows the concern that surrounded that new exception to what was otherwise absolute sovereign immunity under ATA. There was no argument that there was sovereign immunity under ATA until JASTA in 2016. Is it your position that the ATA and the FSIA jointly grant immunity? Each one bears on the question that the two should be read together for immunity purposes? Yeah, I think, Your Honor, the two get read together this way. First, because the FSIA, of course, sets the threshold for whether you can ever bring an action against a foreign state. You always have to start with that. But the reason you need to read it together is because the one exception to sovereign immunity under the ATA isn't in the ATA. It's in the FSIA. So the definitions of the FSIA. But if they're read together for purposes of establishing immunity, why wouldn't we read the exceptions together, lump them all together? Well, because when Congress intended to create an exception, I'll back up. Because, again, we start with FSIA for threshold immunity. Sure. And it had always been understood, and again, you can see it in the legislative history, from 1976 to 1992 and then 1992 to 2016, 1992 when ATA came about, that there was no claim against a foreign state under ATA, notwithstanding FSIA. There was no claim. 2337 of the ATA says, and it's the specific statute, so we always prefer writing the canon of interpretation and construction that's specific to the general. It specifically said in the ATA, no exceptions. Yeah. Period. Then in 2016, all of a sudden, there's one limited exception. Right. And that's it. That's the 9-11 exception, in effect, right? Right. So my other question is, the FSIA grants immunity and applies to the foreign state, the agency, and the instrumentality, correct? Yes. But the ATA grants it to the foreign state or the agency but doesn't say anything about an instrumentality, and isn't your client an instrumentality? Well, I'll break that down into two parts. It is an instrumentality. It's also an agency, and I'll explain why. When you look to the exception in 2337, right, of 2337 in the FSIA, so when you're looking at 1605, the exception applies in FSIA. FSIA in 1603 sets the definition of terms used in the FSIA,  and what it does is it defines agency or instrumentality the same way. It puts them in quotes. A foreign state shall include an agency or instrumentality, and they're used the same way. I don't understand. That I don't understand either. Why would they be treated the same way? Why not just use the word agency then? Yeah. Avoid the surpluses. I think the – I can't answer why they chose to draft it that way. Well, they didn't draft it that way. They did. Leaving it aside from why they might have done it, the ATA applies to the foreign state and to an agency, whereas the FSIA applies to the foreign state and an instrumentality, and if the words had different meanings, to avoid surplusage and to give meaning to both, then the ATA doesn't cover an instrumentality, and if your client turns out to be an instrumentality, the ATA immunity doesn't apply at all. You're back on FSIA immunity, aren't you? No, because the exception to ATA sovereign immunity is in the FSIA, so I'm always in the FSIA when I need to look at the definitions that apply to the exception. But your argument is only the definitions but not the exceptions. That's your argument. Well, because there's a specific exception for ATA. What about all the Supreme Court cases? They're not dealing specifically with this issue, but they cite them, Verlinden, Republic of Argentina, Altman, that have all said that the FSIA, I say, must be applied in every action against a foreign sovereign, and then they cite the First Circuit case in Unger that says that they are functionally equivalent. Yeah. Are we just supposed to ignore that? So I think the way we have to read it, and I see, Your Honor, that I'm out of time. Yeah, go ahead. Okay. First off, what Unger was saying is functionally equivalent. There's nothing in Unger that says that they are exactly the same or that all the exceptions that are in the FSIA apply in ATA. It doesn't go that far. I think that the district court deed here is it took Unger and went well beyond what Unger stood for. Does it make any sense that Congress would be trying to expand the rights of victims of terrorism and at the same time provide broader immunity for clients that you're representing? Does that make any sense from a purpose of the statute standpoint? It does. Why? Why would that make sense? Do you agree with me the whole purpose was to expand the rights of terrorism victims? Do you agree with that? Wasn't that the whole purpose of the statute? The purpose of JASTA, one of the purposes of JASTA, was to provide a very limited exception to the ATA, which had no exceptions beforehand. That was it. But the public policy that underlies sovereign immunity has always been to tread very carefully. When JASTA was promulgated, it was promulgated over President Obama's veto, over, for example, Senator McCain's objection,  assuming their allegations are true, an instrumentality of a foreign state who's funding a terrorist organization in the United States, sending the money from banks in the United States to the terrorist organization to purchase weapons, would be immune from suit. Under the ATA, not under the FSIA. This is an ATA claim. So, yeah, under the ATA, you can only sue what you're allowed to sue under the ATA. That goes back to my earlier point, which is that the ATA doesn't reference instrumentalities. They only reference agencies. And if your client is an instrumentality, then you would be clearly covered by the FSIA in the absence of the ATA, as far as immunity purposes go. But the ATA doesn't help you because it doesn't cover instrumentalities. So what I would say, Your Honor, to that is since we have to look at the exception in 1605B, 1605B talks about a foreign state. Then you have to look at how the FSIA defines that. And yet, because that's where the exception is. It's not in ATA. It's in FSIA. And FSIA says a foreign state includes an agency and an instrumentality. So when you read ATA and it says agency, because we're dealing with the FSIA definition for the exception, it also says instrumentality. Well, we don't deal with – we don't have a case that lumps the two together and says that they mean exactly the same thing. Well, there's no – I mean, the statute. And the same thing is true of the Supreme Court. No, when you read the statute purely, forget the legislative history, forget other circuits, First Circuit and whatever, we have a pure textual question, it seems to me. Agency or instrumentality is covered in the FSIA. Agency only is covered in the ATA because we're not a foreign state, an actual foreign state. So those are the questions. Why does the pure textualist viewpoint lead to the fact that the ATA immunity does not extend to your client under the ATA? I think, Your Honor, what I'm saying is that if I look at it purely textually, it does. Because when I go to the exception – But you're giving the same meaning to agency and instrumentality. Because FSIA does in 1603. Well, it may do it in 1603, but it can draw – it mentions the two, but it says agency or instrumentality, but those are not necessarily the same things because otherwise it's surplusage. Well, if we go back to the actual text of 1603 and we look at where it says a foreign state shall include an agency or instrumentality, it has it in quotation marks. Agency – a foreign state includes an agency or instrumentality, and then you look at the way they're treated, and there's no distinction in the statute whatsoever between them. I think the – I think we're going in circles on that, so we understand your position. Thank you. You have two minutes in rebuttal. Thank you. Ms. Castanet. Good morning, and may it please the Court. Andriana Castanet on behalf of the plaintiff's appellees. Regardless of whether this Court evaluates instrumentality status at the time of filing or at the present time, Spare Bank is not entitled to sovereign immunity for its facilitation of funding through the United States to fund all money that ultimately was used for this heinous terrorist attack against an American citizen. So as Your Honor was noting in your questions to Mr. Auslander, the ATA does not extend immunity to instrumentalities, and this is in contrast with the use of the phrase instrumentalities in almost every other sovereign immunity statute. So when Congress discusses agency, it typically pairs that term with instrumentalities. 1603, agencies and instrumentalities. 1605, agencies and instrumentalities. 1608, dealing with service of process, agencies and instrumentalities. But it made a different choice in writing the ATA. It made a choice to include only agencies, and it makes no sense to import the definition of foreign state from the FSIA for a couple of different reasons. The first is it's not actually a definition of foreign state. It's a specification in 1603 of the components of the foreign state that are included. So 1603 says you should read foreign state to include agencies and instrumentalities, but the ATA already specifies the components that are included within 2337, and it says foreign state, agencies, employees, and officers, and that's a different list than FSIA, and it's both more broad and more narrow than the FSIA's definition. It's more narrow insofar as it excludes instrumentalities. It's more broad insofar as it includes employees and officers, and that choice needs to be given meaning. Now, if your honors look at this at the time, at the present time, under the decision in Bartlett, spare bank was an instrumentality of the Ministry of Finance. My opposing counsel notes that the definition of agencies and instrumentalities is statutorily linked, so the Congress chose to define them together, but Dole Food did not. So here's the quote from the Supreme Court in Dole Food. The FSIA's definition of instrumentality refers to a foreign state's majority ownership of shares or ownership interest. That's how Dole Food, the Supreme Court, saw an instrumentality. So what's an agency? That's an instrumentality. What's an agency? The restatement defines an agency as an entity that is, let me find the definition, a body having the nature of a government department or ministry. That's from the restatement of foreign relations. It's sort of like an agency we would refer to an agency in the United States, you know, the SEC or something of that sort, as opposed to a body that's separate from the government to some extent through which the government can exercise its will. That's precisely right, Your Honor, and that actually comports with the definition that's used by spare bank as well. So 18 U.S.C. Section 6, which the defense relies upon, that defines an agency as including an entity in which the United States has a proprietary interest, is further defined by a note to that statute. And that note says that what it means by an entity in which the United States has a proprietary interest is really a governmental corporation and not one in which the interest is merely incidental, meaning, you know, incidental dictionary definition would be something that's, you know, owned in the ordinary course. And so I think that the distinction, Your Honor, makes is- So you're saying the Russian Federation doesn't have a proprietary interest in the bank? It certainly does, Your Honor. It owns a majority of shares. We think that that doesn't make it a governmental corporation in the way that that is used by the note to Section 6 and that its ownership of spare bank is incidental. So it purchased those shares on the open market just like anybody else could have purchased the shares of spare bank. And it is, by definition, and comports with the definition that is given in Dole Foods of a instrumentality where the foreign state owns public shares of that company and it owns a majority of that interest. Well, doesn't the Ministry of Finance-is the Ministry of Finance able to control a spare bank under those circumstances if they have a majority of shares? Or are they not voting shares? Or are they-you know, what's the nature of the ownership? I don't know the answer to that question, Your Honor. I know that they own 50 percent plus one share. Whether that gives them voting power, I just don't know. I'm not sure that that's in the record one way or the other. So you disagree with my proposition that in passing the ATA, Congress was simply relying on the FSISA in whole to cover immunity situations, including the commercial business exception. You would disagree with that? I'm having a hard time to understand because each of you are trying to take parts of the FSISA for your own purposes. So what's your answer to that? So I think that it needs to just be a little more granular than that. It needs to be read in conjunction with the FSISA. It doesn't make sense to read the definition of foreign state into the ATA, but we have to consider what Congress said when it passed the ATA. And one of the things- Why wouldn't it make sense to do that? Why wouldn't it make sense to do that? Just from a practical or from the purpose of the statute standpoint. You think Congress, for the purpose of the ATA, did not want instrumentalities, that there was some specific decision. You know what? We don't want to give immunity to instrumentalities of a foreign state. That's what you think? Yes, Your Honor. I think that- What's that based on? It is based on the purpose of the statute. Why? So Congress specifically intended that the ATA would provide a cause of action and extend extraterritorial jurisdiction to entities that were financing terrorism. The legislative history is very clear on that. And so an instrumentality like a bank, like spare bank in this case, if we use the Dole Food-I'm sorry, we use the Bartlett test, is exactly what Congress intended the ATA to cover. But to address the more fundamental point that Your Honor raises about whether the commercial activity exception applies, you're exactly right that 1605s in any case means in any case. And, in fact, the defense's argument runs straight contrary to- In any case, I guess that means under- It could be different meanings in terms of every piece of litigation in every case or more general nature of always, you know. But my question really is why, if you have one exception, the JASTA exception in the ATA, and they don't incorporate the other exceptions, this is to the other side's point, why isn't that the only exception? And you don't get the commercial activity exception. So two answers to that because I think that that encompasses two questions. So the first is, Hulk Bank specified what in any case means. And Hulk Bank said in any case means a case in which jurisdiction is provided by Title 28, so civil cases. And it cites Amaretto Hess, which explains that jurisdiction is provided by 1330, 1331, and 16, like the FSIA, retracts that jurisdiction for particular categories of cases and restores it when an exception applies. So I think that that answers what in any case means. Hulk Bank answers that question. With respect to the second question about whether JASTA is intended to be the only exception, the defense reads into that statutory text the word only. So that provision states that notwithstanding ATA, a national of the United States, may bring a claim against a foreign state if the foreign state would not be immune under subsection B. They read that to mean only if the foreign state would not be immune under subsection B, but of course that's not what Congress said. And instead, Congress specified in the note to 2333, nothing in the amendments made by JASTA affects immunity of the foreign state, as that term is defined under FSIA from jurisdiction under any other law. And then in section 903D of JASTA, Congress additionally stated that all amendments should be liberally construed to carry out the purposes of Congress to provide relief for the victims of terrorism. And Sparabank's interpretation of the JASTA amendment would do exactly the opposite. It would mean that you're reading the JASTA amendment to basically restrain the causes of action and expand immunity for the present circumstances. And that doesn't comport with congressional purpose. It doesn't comport with the text of the statute. If there are no further questions from the court, we would ask this court to affirm. Thank you. All right, Mr. Ostlander, you have two minutes in rebuttal. I think I want to pick up, Your Honor, where my colleague somewhat left off, which is to actually look at the JASTA exception in FSIA. Because as my colleague just read, it says, notwithstanding section 23372, that's of the ATA. So I'm in the FSIA reading the exception to the ATA that's in the FSIA. A national of the United States may bring a claim against a foreign state. That's what it says, a foreign state. It doesn't say agency. It doesn't say instrumentality. How do we know what a foreign state means in the JASTA exception? So we go back to 1603, which knows when to accept agencies and instrumentalities. We go to 1603 to define the foreign states that's in the JASTA exception, and it says a foreign state includes, quote, agencies or instrumentalities, unquote, with no difference delineated between them. And when the FSIA wanted to say when agencies or instrumentalities should be treated differently than a foreign state, it does. So, for example, 1608, service or process. That happens differently with agencies or instrumentalities than it does with a foreign state. And FSIA specifically said that definition that we use everywhere doesn't apply over here. It doesn't say that in the JASTA exception because that's exactly the definition that it uses. I think the last point I want to make is that when the legislative history made clear, and I think the history of sovereign immunity has made clear, and it was the Supreme Court said this in the Cairo case in 2013, when Congress wants a statute to provide for extraterritoriality, when it wants to increase its reach, it specifically says so. ADA itself says nothing of the sort. For 24 years it had no ability. You couldn't bring any private claim against ADA. And since then it has the limited JASTA exception. One could see, though, perhaps a distinction being drawn between agency and instrumentality from a policy viewpoint because an instrumentality is further removed from the actual foreign state than an agency is. If you buy the view that they have different meanings and that, therefore, you would allow a suit against an instrumentality but not an agency or a foreign state. I would say to Your Honor that I can see that certainly. And then what I would expect is that what the drafting would do, what would happen in the FSIA is what happens exactly when they want to do that. I'm going to draw a distinction. I'm not going to call an agency or instrumentality a foreign state. I gave the example of 1608, safer service. It could do that. What it did in the JASTA exception to the ATA is it just used the word foreign state, which is defined in this very statute just a few pages earlier as including an agency or instrumentality, meaning if we look at it, the way it's defined in 1603. What about her point? What about her point if JASTA says nothing in this amendment affects the unity of the foreign state? What's your response to that? Meaning that the only aspect of JASTA that means everything. That you're reading the exception to be only that you're limiting it where the Congress seems to suggest, no, we're not saying this is it. We're not affecting FSIA for purposes of commercial business exception I'm talking about. For purposes of that exception, which we don't think applies at all, obviously, and we've briefed that. But I think what Congress is saying is we have a very limited exception here. And this JASTA exception, we're telling you where it applies. And so when 2337 says you can't go ahead and sue a foreign state, we made an exception to that. There's one exception. We're otherwise going to limit it. That doesn't contract and eliminate rights or close rights to sue. It gave something to ATA that never existed before, the ability to sue. All right. Thank you both. We appreciate your arguments. Thank you. And we'll reserve decision. Have a good day. Thank you.